[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13358

Non-Argument Calendar

_____

NAZARIE ROMAIN ANDERSON,

Plaintiff-Appellant,

*versus*

EMORY HEALTHCARE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-04891-CC

_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Nazarie Romain Anderson appeals the district court's order granting summary judgment in favor of Emory Healthcare, Inc. (Emory), on her retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3. Because Anderson failed to establish that the legitimate, non-retaliatory reasons that Emory offered for terminating her were pretext for discrimination, we affirm.

## I.

We describe the facts based on a review of the evidence in the light most favorable to Anderson. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). In 2013, Anderson was hired as the Nursing Specialty Director of Medical Services at Emory University Hospital Midtown, a senior-level clinical managerial position. In her position, Anderson was responsible for managing the nursing staff and operations in multiple units, and for working with unit directors to resolve staffing and other personnel issues. She received training on Emory's anti-discrimination policy, which prohibited discrimination on the basis of race, religion, or sex, among other factors. And she was subject to Emory's Corrective Disciplinary Action Policy, under which managers could be terminated for prohibited conduct even if they had not been disciplined before.

In March 2015, Stephani Gutierrez began working as a registry "weekend-only" nurse, a position that required working on one or more weekend days in the hospital's observation unit. Gutierrez reported to the unit director, Shirley McArthur, who in turn reported to Anderson.

Between March 2015 and June 2015, Gutierrez, a Jehovah's Witness, never worked on a Sunday. McArthur and Gutierrez met several times regarding Gutierrez's not working on Sundays and, on July 13, 2015, Anderson met with both McArthur and Gutierrez to discuss the matter. Gutierrez told Anderson and McArthur that she could not work on Sundays because of her religion. According to Anderson, the staffing policy's statement that registry staff were scheduled "as/or if needed to include one Friday, Saturday, or Sunday" meant that Emory could require Gutierrez to work on Sundays, while Gutierrez insisted that "or" indicated that she could still fulfill the position's requirements by working only on Fridays and Saturdays. Anderson and McArthur did not grant the requested scheduling accommodation.

The next day, Gutierrez made a complaint of harassment and religious discrimination via Emory's Trust Line, a toll-free phone number and web tool that allowed Emory employees to voice concerns anonymously to the compliance department. Linda Mathis, Emory's Human Resources Manager, received the Trust Line complaint and began an internal investigation.

On July 16, 2015, Mathis discussed the situation with Gutierrez and met separately with Anderson. Anderson denied

having threatened to fire Gutierrez if she could not work on a Sunday.  Mathis directed Anderson to inform McArthur and Gutierrez that Gutierrez's requests not to work on Sundays or administer blood products, in accordance with her religious faith, would be complied with going forward.  Although Anderson left voicemails for Gutierrez, she did not indicate in them that Gutierrez would not have to work on Sundays.  After Anderson agreed to tell Gutierrez during her next shift that her religious restrictions would be accommodated, Mathis closed the internal investigation.

But Anderson did not inform Gutierrez that her religious restrictions would be accommodated going forward, and on July 22, 2015, Gutierrez sent a letter of resignation, citing her religious reasons.  As it turns out, Gutierrez had filed a charge of discrimination with the EEOC on July 14, 2015, alleging that McArthur had discriminated against her because of her religion.  The charge, which did not mention Anderson, was received by Emory on or after July 24, 2015.

Subsequently, Anderson did not submit any written statement regarding Gutierrez's EEOC charge, nor was she interviewed, deposed, or formally questioned regarding the charge.  On January 7, 2016, Emory provided the EEOC with its first position statement, which made no reference to Anderson, but rather, asserted that McArthur was unaware of any religious accommodation request and did not threaten Gutierrez's employment.

Anderson did have some limited involvement in Emory's response to the EEOC charge. At some point in January 2018, Mathis asked Anderson for Gutierrez's personnel file, but because Anderson was on vacation, she asked two of her staff members to locate the file. On January 16, 2018, just before Emory sent the EEOC a supplemental position statement, Anderson forwarded to Mathis an electronically transcribed voicemail that Gutierrez had left in March 2015, in which Gutierrez referred to her "little situation" and indicated willingness to work on one Sunday in April 2015. Later that day, Emory sent its supplemental position statement, in which it referenced the voicemail and maintained that Gutierrez's employment had never been threatened. It also stated that McArthur, upon learning of the conflict between Gutierrez's religious faith and her work schedule, had directed Anderson to contact Gutierrez to discuss the accommodation request.

On January 31, 2018, the EEOC determined that there was reasonable cause to conclude that Gutierrez was discriminated against because of her religion. Consequently, in April 2018, Gutierrez, the EEOC investigator, and Mary Beth Allen, who was Emory's Chief Human Resources Officer, attended a conciliation meeting. During that meeting, Gutierrez played three audio recordings of conversations between Gutierrez and Anderson. In those recordings, Allen recognized Anderson's voice telling Gutierrez that her employment would be terminated if she did not work her assigned schedule, including Sundays. Allen also heard

Anderson say to Gutierrez, "You can have all the rights in the world, I am not going to change your schedule."

Approximately two months later, on July 2, 2018, Emory fired Anderson. In the termination letter, Allen stated that Emory was aware of audio recordings in which Anderson refused to adjust Gutierrez's schedule to accommodate her inability to work on Sundays. The letter then gave two reasons for Anderson's termination: first, that Anderson's conduct in denying Gutierrez's accommodation request violated Emory's Anti-Discrimination and Harassment Policy, and second, that Anderson had knowingly provided incorrect information to the human resources department, which Emory then relied on in preparing its position statement to the EEOC.

After her termination, Anderson filed an EEOC charge, and the EEOC issued a notice of right to sue. Anderson then sued Emory, complaining that it had retaliated against her for participating in an EEOC investigation.

Emory moved for summary judgment. The magistrate judge issued a report and recommendation applying the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and concluding that Emory had demonstrated a good-faith basis for terminating Anderson, and Anderson had not carried her burden of showing that Emory's reasons were pretextual. The district court adopted the magistrate judge's report and recommendation and entered summary judgment for Emory.

## II.

We review the district court's grant of summary judgment de novo, construing the facts and drawing all reasonable inferences in favor of the nonmoving party. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291–92 (11th Cir. 2012).

Summary judgment is appropriate when the record evidence shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## III.

Title VII makes it unlawful for an employer to discriminate against an employee because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). Protected activity under the participation clause encompasses "proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the

EEOC." *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). Thus, while false statements made in the context of an EEOC charge may be protected under the participation clause, false statements made in connection with an internal investigation conducted prior to and separately from an EEOC charge are not. *See id.* at 1174–76; *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1007 (5th Cir. 1969).

We apply a burden-shifting framework to Title VII retaliation claims supported by circumstantial evidence. *See Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). Under that framework, the plaintiff must first establish a prima facie case of retaliation by showing that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to the protected activity. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). If the plaintiff meets this initial burden, an inference of discrimination arises and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the retaliation. *Id.* at 1135. This burden is "exceedingly light"; the employer need only present evidence raising a genuine issue of fact as to whether it discriminated against the plaintiff. *Furcron*, 843 F.3d at 1312–13 (citation omitted).

If the employer articulates a legitimate, non-discriminatory reason, the presumption of discrimination falls away, and the plaintiff then must show that each proffered reason was merely a

pretext to mask retaliatory actions. *Id.* at 1312. A "reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quotation marks omitted, emphasis in original). To show pretext, the evidence must reveal "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (quotation marks omitted). Conclusory allegations of discrimination alone are insufficient to raise an inference of pretext. *Furcron*, 843 F.3d at 1313.

Anderson argues that the district court erred in determining that the false information that she gave to Emory was provided only in the context of its internal Trust Line investigation, and not in the context of preparing its supplemental position statement to the EEOC. Anderson also disputes that Allen had a good faith basis for terminating her, asserting that Allen's decisionmaking is questionable because she terminated Anderson in June 2018, after Anderson assisted Mathis with Emory's supplemental position statement in January 2018.

We find no error in the district court's conclusion that Anderson's retaliation claim failed because she did not demonstrate that Emory's legitimate, non-discriminatory business reasons were pretextual. First, even assuming that Anderson established a prima

facie case of retaliation based on her limited participation in Emory's January 2018 investigation of and supplemental response to Gutierrez's EEOC charge, Emory nevertheless articulated legitimate, non-discriminatory business reasons for terminating her based on its good faith belief that she violated its Anti-Discrimination and Harassment Policy and provided false information during its internal Trust Line investigation.  *See Furcron*, 843 F.3d at 1312.

Specifically, Allen testified, and Anderson does not dispute, that Allen attended a conciliation meeting in April 2018, where Gutierrez played several audio recordings.  Allen recognized Anderson's voice telling Gutierrez that she would not accommodate her request not to work on Sundays, no matter how many rights she had.  Allen testified that hearing Anderson's recorded statements to Gutierrez caused her to believe that Anderson had violated Emory's Anti-Discrimination and Harassment Policy, which, because Anderson held a senior-level clinical position at the hospital, exposed Emory to a high risk of her engaging in similar acts toward subordinates in the future.  Allen further testified that, upon hearing the audio recordings, she believed that Anderson had not been truthful when Emory first investigated Gutierrez's internal Trust Line complaint, prior to receiving Gutierrez's EEOC charge.

Because we "cannot agree that an employer must be forced to prove—presumably in a court of law—more than its good faith belief that a false statement was knowingly made," and we "do not

sit as a super-personnel department that reexamines an entity's business decisions," we conclude that Emory met its "exceedingly light" burden of articulating legitimate, non-retaliatory reasons for its decision. *Furcron*, 843 F.3d at 1312; *Total Sys. Srvs.*, 221 F.3d at 1176; *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

Second, Anderson failed to provide sufficient evidence to support a finding that Emory's asserted justifications were pretextual. *See Furcron*, 843 F.3d at 1312–13. Even if Allen was mistaken in her belief that Anderson violated Emory's policy and lied during the internal Trust Line investigation, Anderson was required to show not only that Emory's proffered reason for her termination was false, but also that the real reason for her termination was unlawful discrimination. *See Springer*, 509 F.3d at 1349. She has not done so.

Anderson attempts to show pretext by temporally connecting her limited EEOC process participation during January 2018 to her termination five months later. Without more, this connection is too remote to show that her limited participation was the reason for her termination. We have held that even a period of three months between the statutorily protected expression and the adverse employment action is too long to raise an inference of pretext based solely on temporal proximity. *See Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1294 (11th Cir. 2021); *Thomas*, 506 F.3d at 1364.

Apart from conclusory denials of engaging in any misconduct, Anderson has failed to point to any probative evidence, such as implausibilities or incoherencies in Emory's proffered reasons, that the real reason for her termination was discrimination. *See Vessels*, 408 F.3d at 771. In the absence of any genuine issue of material fact as to whether Emory's legitimate proffered reasons were pretextual, Emory was entitled to summary judgment.

## IV.

For the foregoing reasons, the district court's grant of summary judgment in favor of Emory on Anderson's Title VII retaliation claim is **AFFIRMED.**