[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10387
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00414-JDW-PWG


ARTHUR C. JOHNSON,

Plaintiff-Appellant,

versus

COFFEE COUNTY COMMISSION,
JAMES KELLEY,
RANDY TINDELL,
CARL DRUMMOND,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(October 31, 2017)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Arthur C. Johnson appeals the district court's grant of summary judgment in favor of his employer, the Defendant Coffee County Commission (the "Commission"), and the individual defendants James Kelley, Randy Tindell, and Carl Drummond. Although Johnson remains employed by the Defendant Commission, Johnson brought this suit against Defendants under 42 U.S.C. §§ 1981 and 1983, alleging, <u>inter alia</u>, that Defendants denied him promotion opportunities in favor of less senior white employees, subjected him to disparate pay based on his race, and later retaliated against him after he filed a complaint with the Equal Employment Opportunity Commission ("EEOC").[1] We first recount the history of Johnson's employment and the multiple promotions and pay increases he did receive.

## I.  JOHNSON'S EMPLOYMENT

### A.    2004 to 2007

In June 2004, the Coffee County Highway Department, an agency overseen by the Defendant Commission, hired Johnson, an African-American male, as a laborer at a pay rate of $5.71 per hour. Before joining the Highway Department,

---

[1] In his operative second amended complaint, Johnson also alleged a race-based hostile work environment claim. The district court granted summary judgment on that claim because Johnson failed to show Defendants' conduct was objectively severe or pervasive enough to alter the terms and conditions of his employment. On appeal, Johnson does not challenge that ruling, and we do not address it here. <u>Access Now, Inc. v. Sw. Airlines Co.</u>, 385 F.3d 1324, 1335 (11th Cir. 2004) (explaining that we will not address claims that have been abandoned on appeal).

Johnson had worked as a laborer and welder, and had some experience operating heavy machinery in one of his previous positions.

In January 2005, Johnson was promoted to an Equipment Operator ("EO") I position, and his pay increased to $6.69 per hour. In May 2007, Johnson received another promotion to an EOII, Grade 4, Step 1 position, making $9.10 per hour.

## B.    March 2008 Meeting Regarding EOIII Position

In March 2008, Johnson met with Defendant Randy Tindell, the Coffee County Engineer and head of the Highway Department, and Defendant James Kelley, who was then the Road Superintendent of the Highway Department, to discuss job opportunities for Johnson. A few days prior to the meeting, Kelley informed Johnson that Tindell intended to create an EOIII position that would primarily operate two types of excavators, one of which was the Grade-all excavator.

Defendants Tindell and Kelley subsequently learned that Grade-all operators must possess a commercial driver's license ("CDL"), which Johnson did not have at that time. Defendant Kelley informed Johnson that he would need to obtain a CDL. Tindell and Kelley had encouraged Johnson to obtain a CDL "numerous times in the past," and Johnson had attempted to do so previously but had failed.

At the meeting, Defendant Tindell reiterated to Johnson that he would need to obtain a CDL to be eligible for the new EOIII position. Johnson protested that

other employees who did not have CDLs were employed in EOIII positions. Tindell acknowledged that not all EOIII positions required a CDL, but explained that the specific EOIII position that was then available required a CDL. Johnson told Tindell that he would try again to obtain his CDL.

## C.    Attainment of CDL and Promotion to EOIII

In October 2009, Johnson successfully obtained his CDL and received a pay raise from $10.06 per hour to $10.81 per hour. At the time, Johnson was an EOII, Grade 4, Step 4. During the next five years, Johnson received five step increases, up to an EOII, Grade 4, Step 9, paying $11.64 per hour.

Then, on May 21, 2014, Johnson was promoted from an EOII, Grade 4, Step 9 to an EOIII, Grade 5, Step 6. His pay increased from $11.64 per hour to $12.49 per hour, and the effective date of his promotion was May 12, 2014. As of March 2016, Johnson was making $12.68 per hour.

As will be discussed below, Johnson's promotion and pay claims are primarily that he should have been promoted to an EOIII in 2008, or at least by 2010, instead of the less senior white males who were promoted. We discuss the comparators in our analysis.

## II.  RETALIATION CLAIM

In August 2011, Johnson contacted the EEOC regarding discrimination in his employment with the Highway Department, and in October 2011, he filed a

4

formal charge of discrimination.  He alleged that Defendants Tindell, Kelley, and Carl Drummond, a Foreman with the Highway Department, denied him a promotion to an EOIII position in August 2011.[2]  Johnson stated that he believed the denial was based on his race and that less senior white employees had been promoted to EOIII positions.

In December 2011, the Commission responded to Johnson's EEOC complaint, and the EEOC issued Johnson a right to sue letter in March 2012, though Johnson chose not to file suit at that time.

According to Johnson, after he filed his EEO complaint, his "working conditions got worse."  As discussed in our analysis, Johnson asserts that the Defendants retaliated against him by assigning him to an older truck and denying him one hour of overtime work on one occasion.

## III.  PROCEDURAL HISTORY

### A.    Second Amended Complaint

In January 2015, Johnson filed a second amended complaint—the operative complaint for this appeal—against Defendants, alleging, in relevant part, that Defendants discriminated against him in promotions and pay on the basis of his race, and retaliated against him for filing an EEOC charge of discrimination and this lawsuit.  Defendants moved for summary judgment.

---

[2] This particular promotion was not the subject of Johnson's complaint in this case and is not at issue on appeal.

**B.    Summary Judgment Order**

In December 2016, the district court granted Defendants' motion for summary judgment. Regarding Johnson's promotion claims, the district court concluded as to each of Johnson's comparators that Johnson either failed to state a prima facie case or failed to rebut Defendants' legitimate, nondiscriminatory reasons for promoting the comparators before Johnson. The district court likewise determined that Johnson's pay disparity claims lacked merit, as all but one of his comparators received the same pay as him when they held the same position, and the higher-paid comparator was not similarly situated to Johnson because he possessed specialized skills that justified his higher pay.

The district court determined that Defendants were also entitled to summary judgment on Johnson's retaliation claim. The court found that the denial of overtime failed as a retaliation claim because it was not materially adverse, and Defendants provided a legitimate reason for the denial. As to the truck reassignment, the district court found that Johnson failed to show a close temporal connection between the reassignment and any protected activity.

The district court entered judgment in favor of Defendants, and Johnson timely appealed.

6

## IV.  STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment, viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party.  Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1303-04 (11th Cir. 2016).

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing that there exists no genuine issue of material fact.  Furcron, 843 F.3d at 1303.  If the movant satisfies that burden, the non-moving party must then "show that specific facts exist that raise a genuine issue for trial."  Boyle v. City of Pell City, 866 F.3d 1280, 1288 (11th Cir. 2017) (internal quotations omitted).

## V.  RACE DISCRIMINATION IN PROMOTION & PAY

### A.    **McDonnell Douglas**[3] **Framework**

Where, as here, the plaintiff bases a claim of employment discrimination on circumstantial evidence, we apply the McDonnell Douglas burden-shifting framework.  Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1347 (11th Cir. 2007).  Under that framework, the plaintiff must first create an inference of discrimination by making out the elements of a prima facie case.  Id.

---

[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).

Once the plaintiff has done so, the burden shifts to the employer to articulate a nondiscriminatory basis for its employment action.  Id.  If the employer satisfies its burden, the plaintiff must then show that the proffered reason was a pretext for discrimination.  Id.  Furthermore, the plaintiff retains the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against him.  Id.

A plaintiff may show pretext by identifying "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the employer's proffered reasons such that "a reasonable factfinder could find them unworthy of credence."  Id. at 1348-49 (internal quotations omitted).  A reason is not pretext, however, unless the plaintiff shows both that the reason was false and that discrimination was the true reason.  Id. at 1349.

## B.    Discriminatory Promotion Claim

To establish a prima facie case of discrimination based on a failure to promote, a plaintiff may show that he: (1) belongs to a protected class; (2) applied for and was qualified for a promotion; (3) was rejected despite his qualifications; and (4) other equally or less-qualified employees outside his protected class were promoted.  Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1174 (11th Cir. 2010); Bryant v. Jones, 575 F.3d 1281, 1307 (11th Cir. 2009).  To be a proper comparator for purposes of the fourth prong, the other employee must be "similarly situated [to

8

the plaintiff] in all relevant respects." Brown, 597 F.3d at 1174 (internal quotations omitted).

A plaintiff cannot prove pretext in the context of a promotion "by simply arguing or even by showing that he was better qualified" than the person who received the promotion. Springer, 509 F.3d at 1349 (internal quotations omitted). Rather, he "must show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Id. (internal quotations omitted).

Here, the district court did not err in concluding that the Defendants were entitled to summary judgment on Plaintiff Johnson's discriminatory promotion claims. Johnson identifies Philip Norwood, Louie Byrd, and Donald Beagles, all of whom are white males, as comparators. We discuss each comparator in turn.

1.    Philip Norwood

In April 2007, Norwood was hired by the Highway Department as an EOII, and obtained his CDL in October 2007. It is undisputed that when Norwood was promoted to an EOIII position in December 2008, he possessed a CDL and Johnson did not. Notably, the record shows that, as early as 1992, federal law required CDLs for the operation of certain types of equipment, and as early as

9

1993, a Highway Department position description for the EOIII position listed possession of a CDL as a qualification.

Furthermore, in March 2008, Defendant Tindell expressly informed Johnson that a CDL was required for the then-available EOIII position. In his deposition, Johnson confirmed that a CDL was required for promotion to an EOIII at that time. That Tindell did not begin requiring CDLs for all Equipment Operator positions until 2012, and acknowledged in the March 2008 meeting that not all EOIII positions required CDLs at that time, does not demonstrate that no CDL was required for the specific EOIII position for which Norwood was selected. Thus, the district court did not err in concluding that Johnson failed to establish a prima facie case as to Norwood. Given his lack of a CDL in 2008, Johnson could not show either that he was qualified for the particular EOIII position Norwood received or that he and Norwood were similarly situated in all relevant respects. Brown, 597 F.3d at 1174.

2.    Louie Byrd

As to Byrd, the record shows that when Byrd was hired in January 2009, he already possessed a CDL and had 40 years of prior experience operating a wide variety of heavy machinery as an equipment operator and foreman. Additionally, although Byrd was hired as an EOII in 2009, he had previously worked as an EOIII for the Highway Department from 1988 to 1993. At the time of Byrd's promotion

to an EOIII position in February 2010, Byrd had 40 years of prior experience, whereas Johnson had been working as an Equipment Operator for the Highway Department for approximately five years and had obtained his CDL only six months prior.

The record further shows that extensive experience operating heavy machinery is a qualification for the EOIII position. The 1993 EOIII position description listed "[v]ery high skill level in the operation of assigned equipment . . . [and] skill in operation of a wide variety of heavy equipment" as qualifications for the positions. Consistent with those requirements, Defendant Tindell explained that in making EOIII promotion decisions, he looked for "[t]he ability to operate various pieces of equipment with limited supervision," particularly with regard to some of the specialized machines that EOIII's are required to operate.

Given the substantial disparity between Byrd's and Johnson's relevant experience, Johnson cannot show that he was equally or more qualified for promotion to an EOIII position than Byrd. Brown, 597 F.3d at 1174. Nor can he show that Defendants' proffered reason for promoting Byrd before him—Byrd's greater experience—was pretextual. See Springer, 509 F.3d at 1347-49.

11

3.    Donald Beagles

The district court likewise did not err in rejecting Johnson's discriminatory promotion claim as to Beagles. Beagles was promoted to an EOIII position on May 6, 2014, approximately two weeks before Johnson received his promotion to an EOIII position, on May 21, 2014. The effective date of Beagles's promotion, May 5, 2014, was only one week before the effective date of Johnson's promotion, May 12, 2014.

Beagles initially was hired by the Highway Department as an EOII in a mechanic position and had prior work experience assembling equipment, working on tractors, and as a small engine mechanic. Beagles's specialized skills as a mechanic indicate that he and Johnson were not similarly situated in all respects, and also provide a legitimate, nondiscriminatory basis for his one-week earlier promotion, as the record shows that vehicle and equipment maintenance and repair are job duties for the EOIII position. See Brown, 597 F.3d at 1174; Springer, 509 F.3d at 1347-49.

Finally, as to all three comparators, Johnson's argument that seniority in the Highway Department was or should have been a qualification in determining eligibility for promotion is unsupported by the record. Defendant Tindell testified that there was no seniority within the Highway Department. Instead, consistent with Commission policy, in considering employees for promotion to an EOIII

12

position, Tindell based his decisions on the employee's abilities and experience relative to the specific needs of the available EOIII position.  Johnson presented no evidence that consideration of an employee's length of service was required by Highway Department or Commission policy.  Because he has not shown that seniority was a qualification for promotion, Johnson did not show that he was more qualified for a promotion than Norwood, Byrd, or Beagles based solely on his seniority within Highway Department.

## C.    Pay Disparity Claim

To establish a prima facie case of discrimination based on a disparity in pay, a plaintiff must show that he occupies a position similar to that of a higher paid employee outside of his protected class.  See Crawford v. Carroll, 529 F.3d 961, 974-75 (11th Cir. 2008) (citing Meeks v. Computer Assocs., Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994) (discussing disparate pay claims in the Title VII context)); see also MacPherson v. Univ. of Montevallo, 922 F.2d 766, 774 (11th Cir. 1991) (discussing disparate pay claims under the Age Discrimination in Employment Act).

In addition to Norwood, Byrd, and Beagles, Johnson identifies Joey Donaldson and Steven Findley, both white males, as comparators for his pay discrimination claim.  Donaldson was hired by the Highway Department as an EOII, Grade 4, Step 4 in March 2010, at a pay rate of $10.81 per hour.  At the time,

13

he already had a Class A CDL. In October 2015, Donaldson was promoted to an EOIII, Grade 5, Step 7, with a pay rate of $13.00 per hour. A note in Donaldson's personnel file indicated that the EOIII position Donaldson was promoted to was a "one-man patch" crew position.

Findley was hired by the Highway Department in March 2010 as an EOII, Grade 4, Step 4, at a pay rate of $10.81 per hour. At the time, he already had a Class B CDL. As of March 2016, Findley was still an EOII and his pay rate was $12.11 per hour.

On appeal, Johnson primarily argues that he should have received higher pay than his comparators based on his longer tenure with the Highway Department. As with his promotion claims, this argument is unsupported by the record. As noted above, Defendant Tindell testified that there is no seniority within the Highway Department. Tindell further explained that although pay within the Highway Department was partly related to an employee's date of hire, it was also influenced by other factors, such as whether the Commission had approved raises for a given year and whether the employee possessed a CDL. The record therefore shows that although the length of an employee's tenure with the Highway Department can influence his pay, it is not the only relevant factor in determining an employee's wages. Accordingly, Johnson has not shown that he was entitled to higher wages

14

solely on the basis that he had worked for the Highway Department longer than his comparators.

Furthermore, the only comparator who consistently received higher wages than Johnson for the same position was Beagles. As explained above, however, Beagles was originally hired specifically for an EOII mechanic position and possesses specialized skills as a mechanic. Defendants assert that it is Beagles's special skills that account for the disparity between his and Johnson's pay, and Johnson has not presented any evidence to show either that that explanation is unworthy of credence or that discrimination is the true reason for the pay disparity. Springer, 509 F.3d at 1347-49.

With regard to the other comparators, Norwood, Byrd, and Findley consistently received the same or even lower wages than Johnson when they held positions with the same title, grade, step, and CDL status. Donaldson likewise received the same pay as an EOII, Grade 4, Step 4, with a CDL as Johnson did when he held that position. Although Donaldson currently makes more as an EOIII ($13.00 per hour) than does Johnson ($12.68 per hour), the record indicates that Donaldson is one step level higher than Johnson and serves in a specialized position as a one-man patch crew. Johnson has presented no evidence to show that discrimination, rather than Donaldson's specialized position, is the true reason for Donaldson's higher pay. Springer, 509 F.3d at 1347-49.

15

## VI.  RETALIATION

To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered a materially adverse action; and (3) there is a causal connection between the protected activity and the adverse action.  Kidd, 731 F.3d at 1211.  An action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (internal quotations omitted).  "[P]etty slights [and] minor annoyances" do not constitute adverse actions.  Id.

To show a causal connection, the plaintiff must show that the relevant decisionmaker knew of his protected activity, and the protected activity and adverse action were not wholly unrelated.  Kidd, 731 F.3d at 1211.  A plaintiff may establish a causal connection by demonstrating a close temporal proximity between his protected activity and the adverse action.  Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).  A period as long as one month is sufficiently close to establish a causal connection, but a period of three months is too protracted to establish such a connection absent additional supporting evidence.  Id.; Brown, 597 F.3d at 1182.

On appeal, Johnson identifies two alleged acts of retaliation: (1) his reassignment to "an old un-air conditioned pick-up truck" and concurrent removal

from his previous equipment after filing his EEOC charge; and (2) the denial of an overtime opportunity in July 2013, approximately one month after he filed this lawsuit.[4]

Regarding his truck and equipment reassignment claim, the record is unclear as to when those events took place. At his deposition, Johnson stated that he believed the truck reassignment occurred sometime in the 2010-2011 timeframe, but did not provide a specific date. Of course, Johnson did not file his EEOC charge until 2011, so 2010 would be before the charge. Subsequently, in his declaration, Johnson stated only that the reassignment took place "after" he filed his EEOC charge, but he still failed to specify a date or even what month. Absent a more detailed account of when Johnson's reassignment occurred, we are left to speculate whether "after" means immediately after or within several months after. We agree with the district court that such speculation is insufficient to establish the necessary causal connection between Johnson's EEOC complaint and his reassignment. See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005); Higdon, 393 F.3d at 1220.

---

[4] Johnson contends that his arguments regarding the truck reassignment and removal from his previous equipment are separate claims of retaliation, and the district court erred in failing to address the latter claim. In his declaration, however, Johnson indicated that Defendants reassigned him to the older truck "[i]nstead" of allowing him to operate his previous equipment, indicating that these claims are interrelated. Accordingly, in denying Johnson's claim regarding his reassignment to the older truck, the district court implicitly rejected his claim regarding his concurrent removal from his prior equipment.

Regarding his overtime claim, on the day in question, Johnson's work crew was "scattered around," and Johnson was working a different project from the rest of his crew.  The other four crew members, all of whom were white, were called in to work one hour of overtime, but Johnson was not.  Defendant Tindell explained that Johnson was not called in because, by the time he finished his project and returned to the office, "there wasn't enough time for him to make another trip" out to the overtime job site.

Given that Johnson receives 1.5 times his normal pay for overtime, and he was making between $10 and $12 per hour in the relevant time frame, his total loss was less than $20.  It is doubtful that such a small monetary loss on a single occasion would discourage a reasonable employee from making or pursuing a charge of discrimination.  Burlington Northern, 548 U.S. at 68, 126 S. Ct. at 2415; cf. also id. at 70-73, 126 S. Ct. at 2416-18 (affirming jury's findings that reassignment to less favorable job duties and a 37-day suspension without pay were significant enough to be materially adverse).

In any event, even assuming the denial of overtime was materially adverse, Johnson failed to show pretext.  Springer, 509 F.3d at 1347-49.  Johnson protests that Defendants failed to support their proffered explanation with sufficient evidence, asserting that they did not explain why Johnson was working at a separate job site on the day in question or how far away he was from the overtime

18

job site.  Defendants' burden in providing a legitimate, nondiscriminatory reason for their employment actions, however, is one of production only, not persuasion. Springer, 509 F.3d at 1347.  Although not as detailed as Johnson might prefer, Defendants satisfied this burden by producing evidence that Johnson was at another location and would have been unable to reach the overtime job site in time to be of assistance.  Johnson's insistence that he could have been contacted via cellphone or two-way radio does nothing to show that Defendants' explanation was so weak or implausible as to be incredible or that discrimination was the true reason.  Springer, 509 F.3d at 1347-49.

## VII.  CONCLUSION

For all of the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Defendants on all of Johnson's claims.[5]

**AFFIRMED.**

---

[5] On appeal, Defendants argue in the alternative, that the Commission cannot be liable to Johnson under § 1983 and the individual defendants are entitled to qualified immunity.  Because we resolve this appeal for the reasons stated above, we need not address Defendants' alternative arguments.

19