[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11583
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-03718-SDG


DAVID W. FITZGIBBON,

Plaintiff-Appellant,

versus

FULTON COUNTY, GEORGIA,
THE FULTON COUNTY BOARD OF ASSESSORS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 11, 2021)

Before MARTIN, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

David W. Fitzgibbon appeals the district court's grant of summary judgment in favor of his former employers, Fulton County, Georgia and the Fulton County Board of Assessors.  Specifically, he appeals the grant of summary judgment on his retaliation claim brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a).  Fitzgibbon argues the district court erred in granting summary judgment against him, because (1) he presented evidence that his belief that he engaged in a protected activity was objectively reasonable, and (2) he also established a causal connection between his protected activity and his termination and that his protected activity was the "but-for cause" of his termination.  After careful review, we affirm.

## I.

Fitzgibbon, who is white, served as the chief tax appraiser of Fulton County Tax Assessor's Office beginning in 2012.  The primary function of the Tax Assessor's Office is to produce a timely and accurate tax digest every year.  The chief tax appraiser's job is to "compile[] a consolidation report containing information about parcels of property from which the net taxable digest is calculated," which is then submitted to the Board of Assessors for approval.  After additional review, the tax digest is ultimately submitted to the Department of Revenue.

2

In 2016, while Fitzgibbon was serving as the chief tax appraiser, Fulton County experienced difficulties producing the tax digest in a timely and accurate manner. These difficulties included erroneous valuation calculations. As a result, the Department of Revenue gave the County an extension to September 1, 2016 to submit its tax digest, which caused a two-month delay in the collection of taxes. This delay created a host of "complications and distractions" for local governments. On August 19, 2016, the Board of Assessors called for a closed meeting, expressing that it was "extremely concerned about the delays associated with the tax digest and wanted to discuss a plan of action to remedy any future problems." Fitzgibbon, as the chief tax appraiser, was not invited to attend. However, Fitzgibbon was aware of the meeting and knew that he was the subject of the meeting.

Meanwhile, that same year, Fitzgibbon and the Tax Assessor's Office received a series of anonymous complaints from employees alleging that Fitzgibbon and certain others in management were creating a racially hostile work environment. As a result, the Department of Human Resources Management and the Office of Diversity and Civil Rights Compliance initiated investigations, which culminated in a Workplace Environment Assessment Report and an Executive Summary (the "Human Resources Report"), dated August 24, 2016. The Human Resources Report detailed employee complaints of management, and

3

recommended actions for improving morale in the office. It did not, however, recommend any disciplinary action against Fitzgibbon.

When Fitzgibbon was provided a copy of the Human Resources Report on August 26, 2016, he responded with an email on August 29, 2016 (the "August 29 email"), sent to (1) the personnel director for Fulton County, (2) members of the Board of Assessors, and (3) five other individuals. In that email, Fitzgibbon alleged "reverse discrimination" based on race.[1] Many of members of the Board of Assessors found Fitzgibbon's email "unprofessional."

---

[1] The email stated the following:

> It is very apparent that after nine months in which you were supposed to interview all the Assessor's staff that you have drawn conclusions based on unsubstantiated statements from less than half of the staff, and no supporting evidence. Those staff interviewed obviously included those that distributed the anonymous letters filled with lies and accusations that were not supported by facts or evidence and that any reasonable person would have discounted as a small faction of staff with a racial agenda against the only two caucasian managers in the Assessors' Office.
> As the environment in the Assessors Office described in your report is in no way reflective of the true working environment in the Assessors Office, it becomes obvious that you are not qualified to conduct an impartial and thorough review as indicated by the report which bases the conclusions of, according to your staff investigators on a small faction of those interviewed, which in turn are less than one half of the total staff.
> It seems very apparent that your staff investigators, all African-American, and those interviewed, also African-American have an agenda that smacks of reverse discrimination and the sole purpose of those that seem so discontented is not to seek Justice but to bring about a change in leadership that would take the Assessors' Office back to those days of incompetency so evident and so thoroughly described in the Department of Revenue's Performance Review Board of 2006, and which has been completely changed under the

4

On August 28, 2016, the day before Fitzgibbon's email, a member of the Board of Assessors sent an email to the rest of the Board recommending that they terminate Fitzgibbon.  The Board of Assessors voted to terminate Fitzgibbon on September 15, 2016.

Fitzgibbon filed suit against Fulton County and the Board of Assessors alleging, among other things, Title VII retaliation.  Specifically, Fitzgibbon claimed he was fired for sending the August 29 email, which he says alleged race discrimination and thereby constituted protected activity under Title VII.  He alleged that his firing was thus unlawful retaliation.  He also alleged that the reason given for his termination—the delay of the tax digest preparation—was pretextual.

As relevant to this appeal, Fitzgibbon and the Defendants filed cross-motions for summary judgment on the Title VII retaliation claim.  The district

current leadership team.
Before further comments or distribution of the report the following information needs to be furnished to me and the Board of Assessors' for review:
Please send me the following data:
•the race, gender and age of each staff interviewed
•a list of questions asked each and their verbatim responses
•any spreadsheets, group discussions, or method of analyzing the results of the interviews
•specific instances of complaints or statements that would support the preposterous accusations other than personal observations or opinions
•the race age and gender of every member or the interview panel and their professional qualifications and specialized training in these matters.
I expect these items by close of business Wednesday, August 31.

5

court denied Fitzgibbon's motion and granted the Defendants' motion. The court found insufficient evidence to infer that Fitzgibbon's subjective belief that he engaged in a protected activity was objectively reasonable. The court said Fitzgibbon failed to proffer specific evidence that racial animus motivated those who participated in the investigation and produced the Human Resources Report. The court also found that, even assuming Fitzgibbon had established that his email was a protected activity, he could not meet his burden that the email was the but-for cause of his termination, given that his termination was already in motion before his participation in the alleged protected activity. Fitzgibbon timely appealed.

## II.

Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, the plaintiff must prove (1) he was engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal link existed between the protected activity and the adverse employment action. Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1310 (11th Cir. 2016).

6

A plaintiff has the ultimate burden of showing that a retaliatory motivation was the but-for cause of the adverse action.  Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352, 133 S. Ct. 2517, 2528 (2013).  Thus, to survive summary judgment, a plaintiff must show that the complained of adverse decision was because of his protected activity, and his employer would not have made the decision but for his engagement in that protected activity.  Id.  A plaintiff can establish causation for prima facie purposes by showing a "very close" temporal proximity between the statutorily protected activity and the adverse action. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (quotation marks omitted).  However, "in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation."  Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (emphasis added).

We review de novo a district court's grant or denial of summary judgment. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002).  Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact and compels judgment as a matter of law.  Fed. R. Civ. P. 56(a); State Farm Mut. Auto. Ins. Co. v. Duckworth, 648 F.3d 1216, 1219 n.5 (11th Cir. 2011).  "All reasonable

7

inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." Ave. CLO Fund, Ltd. v. Bank of Am., N.A., 723 F.3d 1287, 1294 (11th Cir. 2013) (quotation marks omitted). A "mere scintilla of evidence" supporting the nonmoving party's position will not suffice to survive summary judgment. Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1162 (11th Cir. 2006) (quotation marks omitted).

## III.

We conclude the district court did not err in granting summary judgment to Defendants on Fitzgibbon's retaliation claim. We need not reach the issue of whether the August 29 email constitutes protected activity under Title VII, because even assuming that it does, Fitzgibbon has not shown that he can meet his burden of establishing but-for causation.

Here, the district court found that even assuming that Fitzgibbon's August 29 email constituted protected activity under Title VII, he could not establish that it was the but-for cause of his termination. Specifically, the court found:

> [T]he record here is replete with evidence that [Fitzgibbon's] termination from employment was already contemplated and in motion prior to his participation in alleged protected activity. In fact, [Fitzgibbon] had recently failed to perform an essential part of his job—the timely and accurate production of a tax digest. [Fitzgibbon] cannot show, on this record, that the

8

termination of his employment would not have occurred but for his allegation of race discrimination.

We conclude the district court did not err in finding that Fitzgibbon failed to establish the causal connection required to establish a prima facie retaliation claim because his termination was contemplated separate from, and before, he engaged in any allegedly protected activity. This record shows that Fitzgibbon's termination was in motion even before he sent the email he claims as his protected activity. The record shows that the Board of Assessors was considering termination due to employee complaints about the "tense" and "unprofessional" work environment Fitzgibbon reportedly created in the Tax Assessor's Office. We know that the Board of Assessors met ten days before Fitzgibbon sent his email to discuss the problems caused by the faulty 2016 tax digest, and a Board member recommended Fitzgibbon's termination to the rest of the Board before Fitzgibbon ever alleged discrimination. Although Fitzgibbon was fired two weeks after the August 29 email, the earlier discussions of termination precludes him from establishing a causal connection based on temporal proximity alone. See Drago, 453 F.3d at 1308 ("[I]n a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.").

9

Moreover, Fitzgibbon carries the ultimate burden of persuasion that the reasons for his termination were pretextual and that the adverse employment action was instead the result of intentional discrimination. See Furcron, 843 F.3d at 1310–11. On this record, we cannot say the reasons discussed by officials for firing him in advance of his emails—namely, the untimely preparation of the required tax digest, and unprofessionalism detailed in the Human Resources Report—were pretextual.[2] Therefore, we affirm.

**AFFIRMED.**

---

[2] The record also contains evidence showing that another former chief tax appraiser, who was African-American, was removed from her position in 2006 for failing to present a tax digest in a timely manner, and that an assistant chief appraiser, a person of color, was also terminated for creating an "unpleasant" work environment for employees.

10